# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

RALPH BAZE                                                                      PLAINTIFF

v.                                                     CIVIL ACTION NO. 5:11-CV-P83-R

PHILLIP PARKER et al.                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment filed by Defendants (DN 37). The matter being ripe, the Court will grant the motion for summary judgment for the following reasons.

### I.

Plaintiff, a death row inmate at Kentucky State Penitentiary (KSP), sued in their individual capacities Philip Parker, Warden at KSP; KSP Deputy Warden Ernest E. Williams; KSP Chaplin Sheila Burnham; Kentucky Department of Corrections (KDOC) Commissioner LaDonna Thompson; KSP Captain Lane; KSP Officers Wilkerson and Tolbert; KSP Adjustment Committee Members Jamie Caraway and Tammy Darnell; KSP Program Director Rocky Roberts; and two John or Jane Does. Plaintiff alleged that on June 3, 2010, both he and another death row inmate requested pastoral visits, but Plaintiff was denied a visit from Pastor Ralph Hale. Documents attached to the complaint show that on May 28, 2010, Defendant Parker issued a memorandum that Pastors Joe and Helen O'Cull were approved for a pastoral visit with inmate Robert Foley on June 3, 2010. A letter from Defendant Williams to Pastor Hale dated June 3, 2010, attached to the complaint, states:

> Mr. Hale:
>
> I have found this type of visit for you has been approved on many occasions. However, I am denying this one. If you wish to visit each

>month you can ask the inmate to place you on his visitation list.
>Another alternative is to go through the chaplain's office and become
>a volunteer.

Plaintiff grieved the denial of the visit with Pastor Hale. Shortly thereafter, according to the allegations of the complaint, all pastoral visits were stopped.

Plaintiff further stated that he did a television interview on July 30, 2010, in which he told about his pastoral visit being denied and expressed his belief that he was being retaliated against in that his pastoral visits were being stopped because he had filed a grievance. Plaintiff stated that on the next day, July 31, 2010, he was out of his cell on recreation and needed to use the bathroom. Plaintiff alleged that he requested Defendant Tolbert, the walk officer, to have the bathroom door opened. Defendant Tolbert called Officer Wilkerson, the control room officer, requesting that the bathroom door be opened, but five minutes later Plaintiff still had no access, so Plaintiff asked Defendant Tolbert to call again. Another five minutes went by after Defendant Tolbert called again, and Defendant Wilkerson again refused to open the bathroom door. Plaintiff alleged that after 23 minutes of waiting, he began to wet himself. He stated that he then urinated in a shower stall, after which he was taken to segregation for creating a health hazard.

Plaintiff's First Amendment claims, his Equal Protection claim, his retaliation claim, and his claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA) were allowed to go forward. As relief, he requested declaratory and injunctive relief, as well as monetary and punitive damages.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted).

**Exhibits attached to Plaintiff's response to the summary-judgment motion**

Plaintiff moved the Court to impose sanctions on Defendants for failure to respond to discovery requests. His requested sanctions included deeming his request for admissions as

admitted. The Court denied these motions. However, before the Court ruled on those motion Plaintiff filed a response to the summary-judgment motion which relied heavily on arguments that Defendants had admitted the statements made in Plaintiff's requests for admissions. Therefore, the Court allowed an additional 30 days for Plaintiff to file another response to the summary-judgment motion. Plaintiff did so; however, it is the same response. As was explained to Plaintiff in this Court's prior Order, the Court has denied Plaintiff's request to deem the admissions admitted. Therefore, Plaintiff's reliance on the admissions requests he made to Defendant as being admitted is inappropriate and will not be considered by the Court as support for Plaintiff's arguments against denying the summary-judgment motion.

*First Amendment*

The First Amendment prevents the government from prohibiting or excessively curtailing the free exercise of religion. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). Plaintiff does have a constitutional right to practice his religion; however, because Plaintiff is a prisoner, Defendants need only show that regulations impinging on his constitutional right are reasonably related to a legitimate penological interest. *See Hayes v. Tenn.*, 242 F. App'x 546, 549 (6th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Attached to the summary-judgment motion is an affidavit from Defendant Williams who avers that he is the Deputy Warden of Security for KSP and has been since April 15, 2010. He states that his duties include the supervision of inmate visits and visitation policy as well as allowing or disallowing "special visits." He avers that he discovered that allowing clergy to visit under "special visits" violated KDOC Correctional Policies and Procedures (CPP) 16.1, which governs inmate visits. He explains, "[t]he policy states clergy can have a 'special visit' during a

4

family death, illness or similar situation. KSP has been allowing clergy to visit regularly under this policy in the past." He further avers that on June 3 and 21, 2010, he sent a letter to Pastor Hale denying his "special visit" to Plaintiff but indicated that if Plaintiff wished to visit with him, Pastor Hale could be put on the visitation list or become a certified volunteer chaplain. After Plaintiff filed a grievance, a committee was formed which recommended that certain language needed to be removed from KSP's Internal Policies and Procedures (I.P.P.) and that clergy must be required to be on an inmate's visiting list or be a certified volunteer. Defendant Williams further avers that after a meeting with Defendant Roberts, Roberts informed inmates and various clergy members that KSP would no longer authorize regular scheduled clergy visits and all clergy would have to be placed on an inmate's visitation list or become a volunteer chaplain. Defendant Williams avers that "[t]he clergy have since been added to the inmate's visitation list resolving their grievances within the institution's policies." An affidavit by Defendant Roberts also avers that "clergy have since been added to the inmate's visitation list." Defendants state in their summary-judgment motion that the total cessation of pastoral visits lasted approximately four weeks, and Plaintiff does not dispute this assertion.

In another case brought by five other KSP death row inmates precipitated in part by the same cessation of clergy visits and change in visitation policy at issue here, this Court found that the temporary suspension of clergy visits while KSP's institutional policies were brought into compliance with CPP 16.1 was rationally related to a legitimate penological interest in safety as well as the conservation of prison resources, and, therefore, the temporary suspension of clergy visits did not violate the Free Exercise Clause of the Constitution. *Haight v. Thompson*, No. 5:11-CV-118-R. In *Haight*, the Court, as it will here, assumed that Plaintiffs' religious beliefs

5

were sincerely held and that the temporary suspension of clergy visits was a "substantial burden" on religious exercise. The Court applied the four-part test in *Turner v. Safley*, to the restrictions on those inmates' free-exercise right to determine if the restrictions were reasonably related to a legitimate penological interest. First, there must be a valid and rational connection between the prison regulation and the legitimate governmental interest; second, to determine if the regulation is reasonable, the Court must ask whether there are alternative means of exercising the right; third, the Court must consider the impact that accommodating the constitutional right will have on guards, other inmates, and the allocation of resources; and fourth, the absence of ready alternatives is evidence of the regulation's reasonableness but the existence of obvious, easy alternatives may evidence the regulation's unreasonableness. *Turner*, 482 U.S. at 89-91. This Court in *Haight* found that the first prong was met because clergy visits were suspended because the visits did not comply with policy and because non-compliance created potential security risks. Second, the Court found that although no alternative means to exercise the inmates' free-exercise right were present, which would normally weigh against the reasonableness of the regulation, here the temporary suspension of clergy visits was necessary to allow KSP officials to understand, correct, and correctly apply policy. Third, with regard to the impact that accommodation would have on guards, other inmates, and the allocation of resources, the Court found that because the regulation impacted all inmates, death row and general population alike, the accommodation of the plaintiffs in that case could have fostered resentment, potentially causing unrest and security risks. And, fourth, there was no existence of an obvious, easy alternative. The Court finds no reason to deviate from its conclusion in *Haight* that the temporary suspension of clergy visits did not violate the Free Exercise Clause.

6

Plaintiff makes much of the apparent conflict between the policies which, for a period of time, did not allow the same clergy to appear on more than one inmate's visitor list (this has now been corrected) and Kentucky Revised Statute § 197.270(2) which provides that "[a]n inmate shall be allowed at least one (1) visit per week by a minister, priest, or rabbi of the inmate's choice." However, it is not a *constitutional* violation to deprive an inmate of the pastor of his choice. "The First Amendment does not require prison officials to provide religious leaders of the inmate's choice." *Burridge v. McFaul*, No. 97-3950, 1999 WL 266246, at *2 (6th Cir. Apr. 23, 1999) (citing *Thompson v. Kentucky*, 712 F.2d 1078, 1080 (6th Cir. 1983)). *See also Payne v. Lucas*, No. 6:12-1904-DCN-KFM, 2012 WL 4847124, at *2 (D.S.C. July 19, 2012) (finding that "prisoners are not entitled to have the clergyman of their choice provided for them in correctional facilities"); *Farnsworth v. Baxter*, No. 03-2950-B/V, 2005 WL 2373417, at *5 (W.D. Tenn. Sept. 27, 2005) (finding that prison officials are not constitutionally obligated to provide volunteer chaplains, and cases cited therein).

Under 42 U.S.C. § 1983, the initial inquiry is whether the plaintiff has been deprived of a right "secured by the Constitution and laws" of the United States. § 1983; *Baker v. McCollan*, 443 U.S. 137, 140 (1979). "A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules." *Archie v. Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988). Therefore, to the extent that Plaintiff relies on Kentucky state law to show that Defendants violated his federal constitutional rights, that argument is without merit. *Monroe v. McNairy Cnty., Tenn.*, 520 F. Supp. 2d 917, 920 (W.D. Tenn. 2007). "[A]ny § 1983 actions for violations of state law should be dismissed as not

7

properly brought under § 1983 (only federal law and constitutional violations are properly brought under § 1983)." *DeCosta v. Medina Cnty.*, No. 1:04CV1118, 2006 WL 1474000, at *4 (N.D. Ohio May 24, 2006). For the foregoing reasons, Defendants are entitled to summary judgment on Plaintiff's First Amendment claim.

*Equal protection*

In the complaint, Plaintiff claimed that his right to equal protection was violated when another inmate was allowed a pastoral visit and he was not and when he was not allowed to use the bathroom on July 31, 2010. The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To prove an equal-protection claim, Plaintiff must show, in part, that Defendants intentionally discriminated against him because he was a member of a protected class, *McCleskey v. Kemp,* 481 U.S. 279, 292 (1987); *Purisch v. Tenn. Tech. Univ.,* 76 F.3d 1414, 1424 (6th Cir. 1996), or that he was treated differently than similarly situated individuals and that there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Plaintiff does not allege that he is part of a protected class but instead appears to allege that he was treated differently than similarly situated individuals.

"In *Olech*, the Court laid out the basic requirements for a valid class-of-one claim: a plaintiff must allege 'that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Franks v. Rubitschun*, 312 F. App'x 764, 766 (6th Cir. 2009). "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by

animus or ill-will." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005)).

Documents attached to the complaint show that on May 28, 2010, Defendant Parker issued a memorandum stating that Pastors Joe and Helen O'Cull were approved for a pastoral visit with inmate Robert Foley. In contrast, a letter from Defendant Williams to Pastor Hale dated June 3, 2010, attached to the petition, states that Pastor Hale's request for a visit was being denied despite "this type of visit [having been] approved on many occasions." Attached to the response to the summary-judgment motion is an affidavit from Pastor Hale, who avers that on May 28, 2010, he requested a pastoral visit with Plaintiff. He further avers that, "[o]n the same day that I would have seen Ralph Baze, inmate Robert Foley had a Clergy Visit with Rev. Joe O'Cull. This clearly shows discrimination either toward [Plaintiff] or me. From this time all of my visit requests were denied."

Thus, the record shows that the pastoral visit to inmate Foley was approved on May 28, 2010, by the Warden, Defendant Parker. The denial on June 3, 2010, by Defendant Williams of the requested pastoral visit to Plaintiff occurred six days later and by a different official whose duties, which he had first shouldered about six weeks prior, included supervising inmate visits and the visitation policy, as well as allowing or disallowing "Special Visits." According to Defendant Williams's affidavit, between the time he assumed those duties on April 15, 2010, and June 3, 2010, he "discovered that allowing clergy to visit under 'Special Visits' was in violation of CPP 16.1." Thus, the difference in treatment between Plaintiff and inmate Foley in early June 2010 is explained by Defendant Williams's growing awareness of problems with the as-practiced clergy visitation. The Court finds that the difference in treatment has a rational basis and

9

therefore is not an equal-protection violation.

Plaintiff also further claimed that the refusal to allow him access to the bathroom on July 31, 2010, violated his equal-protection rights. The affidavit of Defendant Tolbert avers that on July 31, 2010, Plaintiff had come into his office asking to use the restroom. However, at that time the restrooms routinely used by death-row inmates on recreation were on a mandatory lockdown due to a previous physical confrontation between two inmates in an empty cell. Defendant Tolbert further avers:

> I called the Control Center over the radio and requested the cell be opened to the bathroom area. A few minutes after the request Inmate Baze came back into my office and asked if I called the Control Center. So I radioed the center again requesting the door be opened. After waiting several minutes Inmate Baze came back in my office and informed me he was "fixing to piss in the shower". After Inmate Baze left my office, I walked into the shower area and he was indeed in full uniform urinating in the shower stall. . . . I . . . called the shift commander, David Lane and informed him of exactly what happened. I informed him I was writing Inmate Baze up for category 6-11, creating or causing a health hazard. The shift commander said he was sending some officers over to get Inmate Baze and take him to segregation.

Also attached to the summary-judgment motion is the affidavit of Defendant Wilkerson who avers that during the time Plaintiff was reported to have urinated in the shower she was the "control officer." She avers that she does not recall Officer Tolbert asking her to open the bathroom cell door, but that if she had heard the call or if the call had been made she would have opened the door. She avers, "I would never deny anyone access to a bathroom." She further avers that "[d]uring the time in question all cells were to remain closed due to a disturbance on the walks."

Plaintiff has not pointed to any evidence that another inmate was allowed to use the

10

bathroom during this roughly half-hour period. Nor has he rebutted Defendants' explanation that the restrooms were temporarily closed due to a lockdown situation. A lockdown due to an inmate altercation is a rational response to a security risk, and security in prisons is a legitimate state interest. *See Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979) ("'[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves.'"). Moreover, the affidavits submitted by Defendants in support of their summary-judgment motion establish that the wrongdoing Plaintiff alleged – that he was denied use of the bathroom – was merely an isolated occurrence due to a mandatory lockdown situation caused by two other inmates and Defendant Wilkerson not receiving the request to let Plaintiff use the bathroom. *See, e.g.*, *Jackson v. Leutzow*, No. 2:05-cv-188, 2006 WL 3751168, at *5 (W.D. Mich. Dec. 18, 2006) (finding one isolated insensitive remark insufficient to support equal-protection claim). Accordingly, the Court finds that Defendants are entitled to summary judgment in their favor on this claim.

*Retaliation*

Plaintiff claimed that the refusal to allow him to use the bathroom the day after he gave a television interview was motivated by retaliation, as was the complete cessation of pastoral visits after he filed a grievance related to the denial of Pastor Hale's visit. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the

11

protected conduct. *Id.* Plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). As set forth below, the Court finds that Plaintiff has not shown that any adverse actions were taken against him because of protected conduct (and consideration of the first two elements is not necessary).

With regard to the cessation of pastoral visits, the affidavits of Defendant Williams and Roberts each contain the following statements: "Denying the pastoral visits was in no way a form of retaliation against Inmate Baze. This correction in policy effected several inmates not only on Death Row but also in General Population." Defendants also have submitted the affidavits of Defendants Wilkerson and Tolbert who aver, "I have no prior knowledge of a TV interview or denial of pastoral visits regarding Inmate Baze. I took no action as any form of retaliation nor was I instructed to perform any act as a form of retaliation towards Inmate Baze."

Here, the complaint is verified, *i.e.*, Plaintiff certified under penalty of perjury that the contents of the complaint were "true and correct." It contains allegations that Defendants retaliated against him for exercising his First Amendment rights. "Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).

However, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Here, the complaint simply alleges that Defendants' actions were taken in retaliation. Such conclusory statements do not meet Plaintiff's burden of showing that a genuine issue for trial exists as to the

motivation of Defendants. *See* Fed. R. Civ. P. 56(e)(3) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it"); *see also Perry v. Wellington*, No. 98-4215, 1999 WL 1045170, at *2 (6th Cir. Nov. 9, 1999) (conclusory assertions are insufficient for purposes of surviving summary judgment); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, at *2 (6th Cir. May 6, 1997) (per curiam) (same). Simply put, an affidavit or verified complaint "contain[ing] only conclusory allegations and naked conclusions of law" does not create a genuine issue of fact for trial. *Sigmon v. Appalachian Coal Prop., Inc.*, 400 F. App'x 43, 49 (6th Cir. 2010).

Aside from the conclusory statements in his verified complaint, the only other evidence suggesting that the motive for denying him pastoral visits and access to the bathroom was retaliation is the temporal proximity between his television interview and filing of grievances and the alleged retaliation. "Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010); *see Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim."). The Court finds that Plaintiff has not produced evidence of a genuine issue of material fact, and Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

*RLUIPA*

The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a), offers heightened statutory protection concerning the free exercise of religion. Under the RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion. The burden of proving the existence of a substantial interference with a religious exercise rests on the religious adherent." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007).

- *injunctive relief*

Any request for injunctive relief with regard to the pastoral visits is now moot because the complained-of restrictions are no longer in place. Defendant Williams's affidavit avers that "[t]he clergy have since been added to the inmate's visitation list resolving their grievances within the institution's policies." Defendant Roberts's affidavit also avers that "clergy have since been added to the inmate's visitation list." A copy of CPP 16.1 effective February 1, 2013, which is attached to the *Haight* decision as an appendix provides: "Except for clergy, a visitor shall not be placed on more than one (1) inmate list unless both inmates are immediate family members of the visitor." CPP 16.1(II)(D)(8).

Because Plaintiff's complaint about pastor visitation has been resolved, his claims for injunctive and declaratory relief are moot. *See Brooks v. Overton*, 68 F. App'x 703 (6th Cir. 2003) (affirming district court's finding that claims related to showers were moot where prison had installed partitions in the showers).

- *monetary relief*

The Sixth Circuit has not explicitly ruled "on whether RLUIPA authorizes suits for monetary damages against state officials in their individual capacities." *Heard v. Caruso*, 351 F. App'x 1, 13 n.1 (6th Cir. 2009) (citing *Nelson v. Miller*, 570 F.3d 868, 885-89 (7th Cir. 2009) (discussing split of authority on issue)). However, the Sixth Circuit has suggested that monetary damages are not available. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (wherein court found without discussion of official versus individual capacity that RLUIPA authorized no monetary damages against defendants who were sued in individual and official capacities). As set forth in other decisions of this Court, *see Haight*; *Froman v. Ky. Dep't of Corr.*, No. 3:08CV-P238-H, 2010 WL 1416682, at *2 (W.D. Ky. Mar. 31, 2010), this Court finds that Plaintiff's claim for monetary damages against Defendants under RLUIPA must be dismissed because RLUIPA does not provide for monetary damages.

## III. CONCLUSION AND ORDER

For the foregoing reasons, Defendants' motion for summary judgment (DN 37) is **GRANTED**. **IT IS ORDERED** that Plaintiff's claims are **DISMISSED**. The Court will enter a judgment in favor of Defendants.

Date:

cc: Plaintiff, *pro se*
 Counsel of record
4413.009